**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **THREE M ENTERPRISES, INC.** | * | |
| **Plaintiff,** | * | |
| v. | * | **CIVIL NO. RDB 05-252** |
| **TEXAS D.A.R. ENTERPRISES, INC., et al.** | * | |
| **Defendants.** | * | |

## MEMORANDUM OPINION

This action arises out of a business dispute between Plaintiff Three M Enterprises, Inc. ("Three M") and Defendants Texas D.A.R. Enterprises, Inc. ("Texas DAR"); Blankenship Aero, Inc. ("Blankenship Aero"); David M. Blakenship; William Hughes; and Harren Equity Partners. Texas DAR manufactures aftermarket products for automobiles, such as spoilers and dash kits. Blankenship Aero is a subsidiary of Texas DAR, which markets and distributes Texas DAR's products. Defendants Hughes and Blakenship are directors and officers of the two companies, and Harren Equity Partners owns a majority of the shares of both Texas DAR and Blankenship Aero.

On February 21, 2003, Plaintiff Three M entered into an agreement with Defendant Blankenship Aero, pursuant to which Three M agreed to distribute Blankenship Aero products in the general vicinity of Baltimore County, Maryland. Three M created the Blankenship Aero branch and made efforts to market the products. However, the relationship between the companies eventually soured, and, on January 15, 2005, Plaintiff Three M filed a three-Count

Complaint in the Circuit Court for Baltimore County, Maryland, alleging: a violation by all Defendants of the Maryland Franchise Registration and Disclosure Law, MD. CODE ANN., Business Regulation §§ 14-201--14-233 (2004), and/ or the Maryland Business Opportunity Sales Act, MD. CODE ANN., Business Regulation §§ 14-101--14-129 (2004) (Count I); breach of an implied contract by Defendants Texas DAR and Blankenship Aero (Count II); and violation by Defendants Texas DAR and Blankenship Aero of Plaintiff's right to the use of the trade name "Blankenship Aero" (Count III). Defendants removed Plaintiff's action to this Court on January 28, 2005, pursuant to 28 U.S.C. §1441(a), based upon the complete diversity of citizenship between Plaintiff and Defendants. *See* 28 U.S.C. § 1332(a)(2) (diversity jurisdiction).

Now pending before the Court is Defendants' Motion to Dismiss pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure, or, in the Alternative, to Transfer Venue pursuant to 28 U.S.C. § 1406(a). In support of this Motion, Defendants first contend that, based on the forum selection clause in the agreement between the parties, the proper venue for this case is the United States District Court for the Northern District of Texas. In light of that clause, Defendants submit that the Court should either dismiss the case or transfer the matter to the Texas federal court. Alternatively, Defendants argue that the action must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6), because Plaintiff fails to state a viable claim under any of the asserted theories. The issues have been fully briefed, and no hearing is necessary. *See* Local Rule 106.5 (D. Md. 2004). For the reasons that follow, Defendants' Motion to Dismiss or, in the Alternative, to Transfer Venue will be denied.

I.   **Background**

During the fall of 2002, Texas DAR, Blankenship Aero, and Harren Equity solicited David

Blair, who eventually founded Three M, to operate a Blankenship Aero franchise in Baltimore County, Maryland.  Blair discussed the franchise opportunity with various representatives of the Defendants on numerous occasions during late 2002 and early 2003.  These representatives presented Blair with financial projections and expected results for the proposed franchise.   As a result of these discussions, Blair formed Three M Enterprises, Inc. for the sole purpose of operating a Blankenship Aero franchise.  On February 21, 2003, authorized representatives of Three M and Blankenship Aero executed the Authorized Distributor Agreement ("Agreement"), pursuant to which Three M agreed to distribute only Blankenship Aero products in Baltimore County, Maryland.  On the same day, Three M paid $15,000 to Texas DAR.  According to Plaintiff, the $15,000 payment was a franchise fee.

      The Agreement is a standard form contract drafted by Blankenship Aero.  (*See* Def.'s Mem. Supp. M. Dismiss Ex. A.)  The document generally defines the standards that the "Authorized Distributor" must follow in maintaining the distributorship, and Blankenship Aero's duties with regard to the distributor, *e.g.*, training, providing products, etc. (*Id.*)  However, the Agreement states that Three M is to operate as "an independent business as an independent business person." (*Id.* at § 15.1.)  The Agreement purports to govern both the forum and choice of law to be applied in connection with any dispute between the parties.  Specifically, the Agreement provides:

> This Agreement shall be governed by the laws of the State of Texas.  All disputes hereunder shall be resolved in the applicable state or federal courts of Texas.  The parties consent to the jurisdiction of such courts, agree to accept service of process by mail, and waive any jurisdictional or venue defenses otherwise available.

(*Id.* at § 16.3.)  As to Three M's right to use Blankenship Aero's logos, etc., the Agreement states that "[n]othing in this Agreement shall be deemed to grant [Three M] any right, title or interest in"

3

Blankenship Aero's proprietary marks, and that Three M was prohibited from taking any action that "would infringe on, harm, impair or contest the rights claimed by Blankenship" in Blankenship Aero's proprietary marks. (*Id.* at § 13.1.) Finally, the Agreement provides that Three M "has not paid any fee to Blankenship [Aero] in connection with this Agreement." (Def.'s Mem. Supp. M. Dismiss Ex. A at § 15.1.)

After the Agreement was executed, as required by Maryland law, Three M registered the trade name "Blankenship Aero" with the Maryland State Department of Assessments and Taxation. In April of 2003, two Three M employees attended training sessions at the Texas DAR headquarters in Texas. Later in April of 2003, David M. Blankenship came to Baltimore to provide additional training to the Three M employees, and in July of 2003, Don Exum of Texas DAR came to Baltimore to provide additional training to the Three M employees.

Three M promoted the Blankenship Aero products to automobile dealerships throughout Baltimore County, and in other areas within the State of Maryland. Operating under the trade name "Blankenship Aero," Three M adhered to the marketing plan and system devised and prescribed by Texas DAR and Blankenship Aero. As early as May 2003, Three M began to notice problems with the quality of the products being supplied to Three M and the timeliness of the supply of products. Three M complained about these problems to Texas DAR and Blankenship Aero. Although Blankenship Aero and Texas DAR made some efforts to cure these deficiencies, the problems persisted throughout the year 2003.

In January of 2004, Texas DAR and Blankenship Aero cancelled the Agreement with Three M and revoked Three M's right to sell Blankenship Aero products. Subsequently, Three M returned all of

its unsold inventory to Blankenship Aero. Yet, Blankenship Aero never refunded the cost of that inventory to Three M. After terminating its relationship with Three M, Texas DAR and Blankenship Aero opened a company-owned branch in Baltimore County, through which the company continued to market and sell Blankenship Aero products.

On December 8, 2004, Plaintiff brought suit in the Circuit Court for Baltimore County. Defendants removed the action to this Court on January 28, 2005. Plaintiff's Complaint sets forth three Counts. In Count I, Plaintiff alleges that Defendants violated Maryland Franchise Registration and Disclosure Law, MD. CODE ANN., Business Regulation §§ 14-201--14-233 (2004), and/ or the Maryland Business Opportunity Sales Act, MD. CODE ANN., Business Regulation §§ 14-101--14-129 (2004) by selling a franchise or business opportunity in Maryland without registering with the Securities Commissioner in the Office of the Attorney General of Maryland, and by making false and misleading statements in connection with the sale of the franchise or business opportunity. Based upon the failure to register and the fraud and misrepresentation, Plaintiff submits that the Agreement between the parties is void. Count II alleges that an implied contract was in effect between the parties, and that Defendants Texas DAR and Blankenship Aero breached that agreement by failing to timely ship products to Plaintiff, and by shipping defective products to Plaintiff. Finally, in Count III of the Complaint, Plaintiff alleges that it owns the right to the use of the trade name "Blankenship Aero" in Maryland through March 5, 2009, by virtue of its registration of that trade name with the Maryland Department of Assessments and Taxation, and that Defendants Texas DAR and Blankenship Aero are violating Plaintiff's right to the use of that trade name by operating and holding themselves out to the public as "Blankenship Aero."

## II.     Standard of Review

Defendants seek to dismiss Plaintiff's action under Rule 12(b)(3) of the Federal Rules of Civil Procedure based on improper venue, and Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim.[1]  Preliminarily, "[i]n deciding a motion to dismiss, all inferences must be drawn in favor of the plaintiff, and 'the facts must be viewed as the plaintiff most strongly can plead them.'" *Sun Dun, Inc. of Washington v. Coca-Cola Co.*, 740 F.Supp. 381, 385 (D. Md. 1990)(quoting *Coakley & Williams, Inc. v. Shatterproof Glass Corp.*, 706 F.2d 456, 457 (4th Cir. 1983)).

A Rule 12(b)(6) motion to dismiss should be granted only if, after accepting the plaintiff's well-pleaded allegations as true, it appears certain that the plaintiff can prove no set of facts in support of his claim entitling him to relief.  *Marketing Products Management, LLC v. Healthandbeautydirect.com, Inc.,* 333 F. Supp. 2d 418, 420 (D. Md. 2004); (quoting *Edwards v. City of Goldsboro,* 178 F.3d 231, 244 (4th Cir.1999)).  Furthermore, the "Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim."  *Conley v. Gibson,* 355 U.S. 41, 47 (1957).  Rather, Rule 8(a)(2)[2] requires only a "short and plain statement of the claim showing that the pleader is entitled to relief."  *Migdal v. Rowe Price-Fleming Int'l, Inc.,* 248 F.3d 321, 325-26 (4th Cir. 2001).

In reviewing the complaint in the context of a Rule 12(b)(6) Motion, the court accepts all well-pleaded allegations of the complaint as true and construes the facts and reasonable inferences derived

---

[1] The legal standards governing Defendants' 12(b)(3) Motion to Dismiss, and its Motion to Transfer pursuant to 28 U.S.C. § 1406(a), are discussed in the foregoing section.

[2] Fed. R. Civ. P. 8(a)(2).

therefrom in the light most favorable to the plaintiff. *Ibarra v. United States,* 120 F.3d 472, 474 (4th Cir.1997). The court must disregard the contrary allegations of the opposing party. *A.S. Abell Co. v. Chell,* 412 F.2d 712, 715 (4th Cir.1969). However, "the court need not accept unsupported legal conclusions, *Revene v. Charles County Comm'rs,* 882 F.2d 870, 873 (4th Cir.1989), legal conclusions couched as factual allegations, *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst,* 604 F.2d 844, 847 (4th Cir.1979)." *Sensormatic Sec. Corp. v. Sensormatic Electronics Corp.,* 329 F. Supp. 2d 574, 578 (D. Md. 2004).

### III. Analysis

#### A. Motion to Dismiss Pursuant to Rule 12(b)(3), or to Transfer

The Defendants, having removed this case to this Court, pursuant to 28 U.S.C. § 1441(a), now move to dismiss this case pursuant to Rule 12(b)(3). Alternatively, Defendants seek to transfer the matter to the United States District Court for the Northern District of Texas, pursuant to 28 U.S.C. § 1406(a), based upon the forum selection clause at Section 16.3 of the Agreement. This Court has previously noted that, when an action brought in a Maryland state court is removed to this Court, proper venue is fixed in this Court. *Lynch v. Vanderhoef Builders*, 228 F. Supp. 2d 644 (D. Md. 2002).

Ordinarily, the propriety of venue is governed by 28 U.S.C. § 1391.[3] However, in *Lynch,* Judge

---

[3]Section 1391 provides, in relevant part, that an action may be brought only in: (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought. 28 U.S.C. § 1391(a).

Nickerson of this Court recognized that 28 U.S.C. § 1391 "has no application to a removed action." 228 F. Supp. 2d 644. Rather, the proper venue for removed actions, such as the matter at bar, is governed by the federal removal statute, 28 U.S.C. § 1441(a). Section 1441(a) provides, in relevant part, that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, *to the district court embracing the place where such action is pending*." (emphasis supplied). By requiring removal to the district court for the district in which the state action is pending, Section 1441(a) "properly fixes the federal venue in that district." *Hollis v. Florida State University,* 259 F.3d 1295, 1300 (11th Cir. 2001). Indeed, courts have recognized that Section 1441(a) establishes federal venue in the district where the state action was pending "as a matter of law," even if venue would be "improper under state law when the action was originally filed." *See Hollis,* 259 F.3d at 1300 (citing *Serrano v. United States Fire Ins. Co.,* No. EP-00-CA-255-DB, 2000 WL 33348220, *1-*2 (W.D.Tex. Nov.7, 2000); *Bacik v. Peek,* 888 F.Supp. 1405, 1413 (N.D.Ohio 1993); and R. Givens, 1 Manual of Federal Practice § 2.28 (5th ed.1998)).[4] This Court plainly "embraces" the Circuit Court for Baltimore County, Maryland.

The United States Court of Appeals for the Sixth Circuit addressed the propriety of venue in

---

[4]This Court concurs with the assessment of the United States Court of Appeals for the Eleventh Circuit that it is "unnecessary and confusing" to construe Section 1441(a), "as have some courts and commentators, that a defendant who removes a case to federal court 'waives' any venue challenges." *Hollis*, 259 F.3d at 1300 (citing as an example C. Wright, A. Miller, & E. Cooper, 14C Federal Practice & Procedure § 3726 (3d ed.1998)). Further, this Court agrees that because "§ 1441(a) does not give a removing defendant a choice of districts to remove to, it may not be entirely accurate to characterize removal as the voluntary relinquishment of a legal right." *Id.* However, as discussed above, the fact that the removal statute establishes venue as a matter of law precludes Defendants' instant Motion to Dismiss or transfer the action based on improper venue.

removed actions in the case of *Kerobo v. Southwester Clean Fuels Corp.,* 285 F.3d 531 (6th Cir. 2002). In *Kerobo,* a Michigan franchisee brought an action in state court against a California franchisor, which removed the case to federal court based upon diversity of citizenship. *Id.* After removing the case to federal court, the defendants moved to dismiss based upon improper venue, pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure, citing a forum selection clause establishing venue in California. *Id.* In the alternative, the defendants sought to transfer the case to the California federal court, pursuant to 28 § U.S.C. 1404(a). *Id.* The district court granted the defendants' motion to dismiss, and the Sixth Circuit reversed and remanded. *Id.* In reversing the lower court, the Sixth Circuit observed, as did Judge Nickerson in *Lynch,* 228 F. Supp. 2d 644, that venue in a case removed from state court "is governed solely by § 1441(a)." *Kerobo,* 285 F.3d at 534 (citing *Polizzi v. Cowles Magazines, Inc.,* 345 U.S. 663, 665 (1953)). Based on this clear authority, venue is proper in this Court as a matter of law, and Defendants' Motion to Dismiss, pursuant to Rule 12(b)(3) is denied.

For similar reasons, Defendants' alternative Motion to Transfer pursuant to 28 U.S.C. § 1406(a) is without merit. Section 1406(a) provides that "[t]he district court of a district in which is filed a case *laying venue in the wrong division or district* shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." (emphasis supplied). Yet, as previously discussed, this Court is the *proper* venue for the instant action, as a matter of law. Thus, it has been aptly noted that "[i]f a district court is the appropriate forum for venue purposes under Section 1441, then a subsequent transfer to another federal district court must be based upon Section 1404(a) rather than on Section 1406(a) . . . ." *See* 14C Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 3726 at 123 (3d ed. 1998 & Supp. 2005) (citing, e.g., *McCloud Const. Inc. v.*

*Home Depot USA, Inc.,* 149 F. Supp. 2d 695 (D. Wisc. 2001)).[5] Consequently, Defendants' Motion to Transfer, pursuant to 28 U.S.C. § 1406(a), is denied.

### B. Motion to Dismiss pursuant to Rule 12(b)(6) for Failure to State a Claim

### 1. Count I

Count I of Plaintiff's Complaint alleges violations of the Maryland Franchise Registration and Disclosure Law, MD. CODE ANN., Business Regulation §§ 14-201--14-233 (2004), and/ or the Maryland Business Opportunity Sales Act, MD. CODE ANN., Business Regulation §§ 14-101--14-129 (2004).[6] Defendants first seek to dismiss Count I by asserting that the Maryland law claims are precluded by the choice of law provision in Section 16.3 of the Agreement, which mandates the application of Texas law. Secondly, Defendants contend that assuming, *arguendo,* that Maryland law applied, Plaintiff's claims would still fail because Three M does not qualify as a "franchise" under Maryland law. The Court considers Defendants' arguments in turn.

First, Maryland law governs the threshold determination as to whether the choice of law provision in the Agreement should be enforced or set aside. Because this case arises under the Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332, the Court must resolve the choice of law issue in accordance with

---

[5]In the instant case, Defendants have presented no argument with respect to Section 1404(a) and, as a consequence, the Court need not reach that issue. Nonetheless, the Court notes that the forum selection clause, standing alone, would not mandate transfer. *See Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 30-31 (1988); *Kerobo v. Southwester Clean Fuels Corp.,* 285 F.3d 531 (6th Cir. 2002). Moreover, in light of the foregoing analysis regarding Maryland public policy, this Court would not grant a motion to transfer pursuant to Section 1404(a).

[6]The Business Opportunity Sales Act claim is merely an "alternative" claim which would apply only in the event that no franchise relationship is found. In light of the Court's holdings as to the Franchise Act claims, the Court need not reach the choice of law issues relating to the Business Opportunity Sales Act, at this time.

10

the substantive law that a Maryland court would apply. *See Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496 (1941). Under Maryland choice of law rules, "it is generally accepted that the parties to a contract may agree as to the law which will govern their transaction, even as to issues going to the validity of the contract."  *National Glass, Inc. v. J.C. Penney Properties, Inc.,* 336 Md. 606, 610, 650 A.2d 246, 248 (1994) (quotations omitted).  However, the Maryland courts have also recognized that a choice of law provision may be set aside where:

> application of the law of the chosen state would be contrary to a *fundamental policy* of a state which has a *materially greater interest than the chosen state* in the determination of the particular issue and which . . . *would be the state of the applicable law in the absence of an effective choice of law by the parties*.

*Id.* (quoting Restatement (Second) of Conflict of Laws § 187(2) (1971) (emphasis supplied)); *see also M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (U.S.1972) (in admiralty context, the Supreme Court held that "a contractual choice-of-forum clause should be held unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought").[7]

In applying the public policy exception, the Maryland Court of Appeals has held that "merely because Maryland law is dissimilar to the law of another jurisdiction does not render the latter contrary to Maryland public policy and thus unenforceable in our courts. Rather, for another state's law to be unenforceable, there must be 'a strong public policy against its enforcement in Maryland.' " *National Glass,* 336 Md. at 612, 650 A.2d at 249 (quoting *Bethlehem Steel v. G.C. Zarnas & Co.,* 304 Md. 183, 189,

---

[7]Because this Court finds that the choice of law provision at issue violates Maryland public policy, the outcome would be the same under the analysis applied in the federal context, as set forth in *M/S Bremen,* 407 U.S. at 15.  *See also Kerobo v. Southwester Clean Fuels Corp.,* 285 F.3d 531 (6th Cir. 2002) (applying *Bremen* in the context of a franchise agreement).

11

498 A.2d 605, 608 (1985) quoting in turn *Texaco v. Vanden Bosche,* 242 Md. 334, 340-41, 219 A.2d 80, 84 (1966)).

Applying these principles to the instant case, there is no dispute that Defendants would be subject to the Maryland franchise regulation regime absent the choice of law provision.[8] Thus, this Court must only determine whether the Agreement's choice of law provision mandating Texas law runs afoul of a "strong public policy" against its enforcement in Maryland and whether Maryland has a materially greater interest in the determination of Plaintiff's claims. *See National Glass,* 336 Md. at 610, 650 A.2d at 248.

The Maryland General Assembly's legislative scheme for regulating franchises suggests a "strong public policy" in favor of civil enforcement of the Maryland Franchise Registration and Disclosure Law. For instance, in Section 14-202 of the Business Regulation article, the Maryland General Assembly explained the regulation scheme set forth in the Maryland Franchise Registration and Disclosure Law is aimed at stemming "substantial losses" suffered by franchisees when "the franchisor or its representative has not given complete information." *See* MD. CODE ANN., Business Regulation § 14-202 (2004). In addition, the General Assembly noted that the law was intended to "(1) give each prospective franchisee necessary information about any franchise offer; (2) prohibit the sale of franchises if the sale would lead to fraud or a likelihood that the franchisor's representations would not be fulfilled; and (3) protect the franchisor-franchisee relationship." *Id.* Notably, the General Assembly assigned special significance to the civil enforcement mechanism, under which Plaintiff sued, by enacting Section 14-226 of the Business Regulation

---

[8]The Maryland Franchise Registration and Disclosure Law applies to any offer to sell a franchise which is accepted in the State of Maryland. *See* MD. CODE ANN., Business Regulation § 14-203(b)(ii) (2004). Assuming Plaintiff's allegations as true, as this Court must at this stage of the proceedings, the Franchise Registration and Disclosure Law is applicable.

article of the Maryland Annotated Code, which provides:

> As a condition of the sale of a franchise, *a franchisor may not require a prospective franchisee to agree to a release,* assignment, novation, *waiver,* or estoppel *that would relieve a person from liability under this subtitle*.

MD. CODE ANN., Business Regulation § 14-226 (2004) (emphasis supplied). Taken together with statements of legislative intent, the anti-waiver provision set forth in Section 14-226 establishes that the civil enforcement provision of Maryland's franchise regulation scheme constitutes "a fundamental public policy of Maryland." *See National Glass,* 336 Md. at 614, 650 A.2d at 250.

In *National Glass,* the Maryland Court of Appeals found a similar anti-waiver provision to constitute unambiguous evidence of the Maryland General Assembly's intent to establish that any contractual provision contrary to the law is void as against the public policy of the State. The statute at issue in *National Glass* provided that a contractor "may not waive or require the subcontractor to waive the right to . . . [c]laim a mechanics lien" and that "[a]ny waiver provision of a contract made in violation of this section is void." *National Glass,* 336 Md. at 614, 650 A.2d at 250 (quoting MD. CODE ANN., Real Property § 9-113 (1994)).[9] In contrast, the Pennsylvania law, which would have applied pursuant to the choice of law provision, permitted such waiver. *National Glass,* 336 Md. at 614, 650 A.2d at 250. The Court invalidated the choice of law provision reasoning that Maryland General Assembly's language in Section 9-113 "unequivocally" evinced a strong public policy which the choice of law provision would clearly violate. *Id.*

The instant action is highly analogous. Like the provision in *National Glass,* the provision at issue

---

[9]Section 9-113(c) was amended in 1994 to read that: "Any provision of a contract made in violation of this section is void as against the public policy of this State."

13

here would have the effect of entirely depriving a plaintiff of a cause of action to which the plaintiff would otherwise be entitled. This is because Texas law does not provide for a comparable private right of action for failure to register a franchise, nor for failure to fully disclose material information relating to that franchise. *See* TEX. CODE ANN., Bus. & Com. §§ 41.001-41.303. Thus, if enforced, the choice of law clause here would operate as precisely the type of waiver proscribed by the Maryland General Assembly in Section 14-226, and is much like the waiver held to be void as against public policy in *National Glass*, 336 Md. at 613, 650 A.2d at 249. In addition, like the statutory language implicated in *National Glass,* the express language of the Maryland Franchise Disclosure and Registration Act indicates that the Maryland General Assembly "has unequivocally told the Maryland judiciary that such a clause 'is void and unenforceable . . . .'" *National Glass*, 336 Md. at 613, 650 A.2d at 249 (quoting *Bethlehem Steel v. G.C. Zarnas & Co.,* 304 Md. 183, 190, 498 A.2d 605, 608 (1985)). The difference between the statutes, however, is that the property statute at issue in *National Glass* expressly stated that the proscribed waivers are "void as against the public policy of this State," whereas the Maryland franchise statutes contain no such statement. 336 Md. at 614, 650 A.2d at 250. Yet, given the Maryland General Assembly's clear statement of intent, as evinced by Sections 14-202 and 14-226, it is clear that waivers and releases of a plaintiff's rights under the Maryland franchise laws are void as such clauses violate a fundamental public policy of the State. *See National Glass,* 336 Md. at 614, 650 A.2d at 250.

The only remaining inquiry in determining whether the choice of law provision is void under the Maryland public policy exception, is whether Maryland has a materially greater interest than Texas in the determination of the claims asserted in Count I. Based on the nature of the dispute, there is no question that it does. The central issue in the instant case is whether misrepresentations were made to a Maryland

corporation relating to a franchise that was located within Maryland, and which was to do business exclusively within the State. The party seeking protection is a Maryland franchisee,[10] which is precisely the type of entity which the Maryland franchise scheme was intended to protect. *See* MD. CODE ANN., Business Regulation § 14-202 (2004). In contrast, Texas is merely the headquarters of the franchisor. Beyond that, Defendants have failed to show that the State of Texas has any interest in the outcome of the dispute *sub judice*. Accordingly, Maryland has a materially greater interest in the determination of the issues implicated in the instant action.

Based upon the preceding analysis, this Court has concluded that the choice of law provision contained within the Agreement violates Maryland's fundamental policy, that Maryland has a materially greater interest than Texas, and that Maryland law would apply in the absence of the choice of law provision. Consequently, the choice of law provision is void as applied to the claims asserted in Count I of Plaintiff's Complaint.

Finally, Defendants also seek to dismiss Count I based on the contention that Three M is not a "franchise" under Maryland law.[11] In support of this argument, Defendants submit that Plaintiff is not eligible as a franchisee under Maryland law because Plaintiff never paid a franchise fee. The Maryland Franchise Registration and Disclosure Law only applies to "franchises." MD. CODE ANN., Business Regulation § 14-203 (2004). To qualify as a franchise under the law, the purchaser is required to pay, "either directly or

---

[10] As discussed below, the Court assumes the truth of Plaintiff's allegations with respect to its status as a franchisee, for the purposes of this Motion only.

[11] Defendants also argue that Defendants Texas DAR and Mssrs. Blankenship and Hughes could not be held liable as "franchisors." However, that argument fails in light of the clear language of Section 14-227(d) of the Maryland Business Regulation Article, which provides for potential liability for all of the named Defendants.

indirectly," a franchise fee. MD. CODE ANN., Business Regulation § 14-201(e)(iii) (2004). A franchise fee is defined as "a charge or payment that a franchisee or subfranchisor is required or agrees to pay for the right to enter into a business under a franchise agreement." § 14-201(f)(1). The statute also provides that "the purchase of or agreement to purchase goods at a wholesale price" or the purchase of goods on consignment" are not considered a franchise fee for the purpose of the statute. § 14-201(g)(3). Seizing upon this language, Defendants argue that, under the express terms of the Agreement, any payments made by Three M to Defendants were payments for goods, and that no franchise fee was ever paid. Specifically, Defendants point to Section 15.1 of the Agreement, which states that Three M "has not paid any fee to Blankeship in connection with this Agreement." Defendants also suggest that two exhibits to the Agreement (Exhibits B & C) demonstrate that the $15,000 "franchise fee" alleged in paragraph 16 of Plaintiff's Complaint is merely an order for goods.

Defendants' arguments fail for several reasons. First, Defendants did not address Plaintiff's allegation that it paid "a fee in the amount of $15,000 *and indirect franchise fees* during the course of the relationship." (Pl.'s Comp. ¶ 16) (emphasis supplied). It is simply axiomatic that this Court must assume the truth of the allegations of Plaintiff's Complaint when considering a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See, e.g., Edwards v. City of Goldsboro,* 178 F.3d 231, 244 (4th Cir.1999). In addition, although Defendants are correct that this Court may consider a document relied upon in the Complaint,[12] Defendants have cited no authority suggesting that the terms of the form agreement control in light of contrary factual allegations. Finally, Defendants' arguments are essentially challenges to

---

[12]*American Chiropractic Ass'n, Inc. v. Trigon Healthcare, Inc.,* 367 F.3d 212, 234 (4th Cir. 2004).

16

the factual sufficiency of Plaintiff's Complaint, which are premature given the preliminary stage of this proceeding. *See A.S. Abell Co. v. Chell,* 412 F.2d 712, 715 (4th Cir.1969).

For all of these reasons, Defendant's Motion to Dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, is denied as to Count I of Plaintiff's Complaint.

### 2. **Count II**

In Count II of its Complaint, Plaintiff alleges that Defendants breached an implied contract which existed between the parities. This allegation depends upon Plaintiff's contention that the Agreement is voided by Defendants' failure to register the agreement, as required by MD. CODE ANN., Business Regulation § 14-214 (2004). The Maryland courts have recognized that such a failure renders the contract "voidable." *See Holmes v. Coverall North America, Inc.,* 336 Md. 534, 547, 649 A.2d 365, 371 (1994); *Bagel Enterprises, Inc. v. Baskin & Sears,* 56 Md. App. 184, 196-97, 467 A.2d 533, 539-40 (1983). Defendants acknowledge that Plaintiff's implied contract claim is viable if the Maryland Franchise Registration and Disclosure Law applies. (*See* Def.'s Mem. Supp. Mot. Dismiss at 18; Def.'s Reply at 10.) However, based upon the arguments asserted with respect to Count I, Defendants argue that the claim must be dismissed because the Maryland franchise law does not apply. As discussed previously, this Court finds that, at least at this stage of the proceedings, the Franchise Registration and Disclosure Law does apply. Therefore, Defendants' Motion to Dismiss is denied as to Count II of Plaintiff's Complaint.

### 3. **Count III**

Count III of Plaintiff's Complaint[13] alleges that, by continuing to use the Blankenship Aero trade

---

[13] Plaintiff styled Count III as "Injunction," prompting Defendants to move to dismiss the claim as merely a prayer for relief. Notwithstanding this objection, the allegations in Count III plainly state a

17

name in Maryland, Defendants are violating Plaintiff's right to use the trade name. Plaintiff contends that Three M owns the right to use the name in Maryland through March 5, 2009, by virtue of its registration of that trade name with the Maryland Department of Assessments and Taxation, and that Defendants are wrongfully trading under that name within the State of Maryland.  Defendants seek to dismiss Count III contending that the Agreement exclusively governs Plaintiff's rights with regard to the Blankenship Aero trade name and logos, and that any rights thereto were terminated when Defendants terminated the Agreement.  However, as previously discussed, the Agreement is voidable if Defendants are found to have violated the Maryland Franchise Registration and Disclosure Law.  Assuming, *arguendo,* that the Agreement is rendered void, Plaintiff properly registered the "Blankenship Aero" trade name under Maryland law,  *See* MD. CODE ANN., Corps. & Ass'ns § 1-406 (1999 & Supp. 2004), and therefore may be entitled to various forms of relief for Defendants' use of the name within the State of Maryland. Accordingly, at this stage of the proceedings, Count III of Plaintiff's Complaint states a viable cause of action and Defendants' Motion to Dismiss Count III will be denied.

## IV.     CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss or, in the Alternative, to Transfer Venue (Paper No. 3) is DENIED.  A separate Order follows.


May 5, 2005                                                           /s/
                                                                      Richard D. Bennett
                                                                      United States District Judge

---

cause of action under the Federal Rules of Civil Procedure.